# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 24, 2015  Decided November 6, 2015

No. 14–1109

GEOFFREY KENNETH WILLSON,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

———

On Appeal from the Order of
the United States Tax Court

———

*Geoffrey K. Willson*, *pro se*, argued the cause and filed briefs for the appellant.

*Clint A. Carpenter*, Attorney, United States Department of Justice, argued the cause for the appellee. *Tamara W. Ashford*, Acting Assistant Attorney General, *Michael J. Haungs* and *John A. Nolet*, Attorneys, were on brief. *Kenneth W. Rosenberg*, Attorney, entered an appearance.

Before: HENDERSON, KAVANAUGH and PILLARD, *Circuit Judges*.

Opinion for the Court filed by Circuit Judge HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Due to a clerical error by the Internal Revenue Service (IRS), Geoffrey Willson received his 2006 income tax refund twice. When the IRS sought to recover the erroneous refund by levy, Willson challenged the collection efforts first in an IRS administrative proceeding, then in the tax court. At the tax court stage, the IRS changed course; it conceded the levy was an improper collection method, zeroed out Willson's disputed tax liability and moved to dismiss the case as moot. Willson, however, objected to dismissal. He had paid $5,100 to the IRS during the course of the administrative proceedings and, in his view, he is entitled to a return of these funds. He maintains that this continuing controversy precludes dismissal on mootness grounds. The tax court rejected this contention and so do we. For the following reasons, we affirm the tax court's dismissal of Willson's case as moot.

# I.

Breathing life into the adage that no good deed goes unpunished, Willson's tax troubles began when he *overpaid* his 2004 federal income taxes by more than $28,000. Rather than seek a refund of the overpayment, Willson elected on his 2004 tax return to apply the credit forward to cover his future tax liability. The 2004 overpayment credit more than covered Willson's 2005 tax liability so that, when it came time for Willson to file his 2006 tax return, a total overpayment credit of $13,193.55 remained. On his 2006 return, Willson reported a $0.00 tax liability and an additional $30.00 tax credit, leaving a $13,223.55 overpayment credit at his disposal. Willson again forwent a refund and elected to apply the entire overpayment credit to his 2007 taxes.

When he filed his 2007 tax return, Willson took a different approach to the overpayment credit from the one he had

followed the previous three years. Instead of continuing to apply the full amount ($13,223.55) forward to 2008, he requested that the IRS refund him $10,000. The remainder was to be applied to any liabilities for both 2007 and future years.

Unfortunately, the IRS bungled Willson's 2006 and 2007 requests. First, when it processed Willson's 2006 return, it did not carry the overpayment credit forward to 2007 as Willson requested; rather, it sent Willson a $13,223.55 refund check. This should have zeroed out the overpayment credit, leaving Willson liable for his 2007 taxes. But when the IRS processed the 2007 return, it *again* counted the $13,223.55 credit. In accordance with Willson's request, it applied the credit against his 2007 taxes and then directly deposited the $10,000 refund Willson requested, plus an additional $600 tax relief credit and interest in the amount of $85.48. Willson thus received from the IRS *both* a $13,223.55 check *and* a $10,685.48 direct deposit.

Eventually realizing its mistake, the IRS moved to correct it. It entered an overpayment credit reversal on Willson's 2006 tax account, effectively creating a new 2006 tax liability of $13,193.55, and in March 2011 sent Willson final notice that it intended to levy on his property to recover the amount of the new liability in full. In response, Willson requested a Collection Due Process (CDP) hearing to challenge the proposed levy before a neutral IRS hearing officer. The IRS Appeals Office obliged, holding a hearing over the ensuing months via telephone and exchange of written correspondence.

While Willson's CDP hearing progressed, the plot thickened. First, the IRS processed Willson's 2009 tax return. The return reported a total overpayment credit (continuing from 2007 and 2008) of $2,206.55. On March 30, 2010, the

IRS had also received from Willson a $100 payment that it applied toward his 2009 taxes. The IRS thus credited Willson with $2,306.55 in total overpayments for the 2009 tax year. Rather than refunding this amount or applying it to the next tax year, the IRS applied the overpayment to partially offset Willson's newly created 2006 liability. Then, Willson apparently realized for the first time that he had in fact received a double refund. On May 24, 2011, Willson sent a letter to an IRS representative acknowledging that he had received more than he was due. He believed the overpayment was "in the region of about $10,000.00" and enclosed a $5,000 check with the letter, stating that the payment was "not as payment for the 2006 demands which are clearly errors but as an immediately affordable amount to begin returning an overpayment made entirely as an IRS error." Ltr. from Geoffrey K. Willson to Joy Wannamaker, IRS Case Advocate 2 (May 24, 2011). He also offered to pay another $6,000 over three years.

Largely ignoring Willson's proposed compromise, on July 6, 2012, the IRS Appeals Office issued its final "Notice of Determination" sustaining the proposed levy action. As of that date, approximately $6,000 remained subject to levy—the balance of the 2006 assessment ($13,193.55), less the amount the IRS had already "recovered" from Willson ($7,306.55, consisting of Willson's $5,000 payment and the $2,306.55 offset from Willson's 2009 tax return).

Willson appealed the IRS determination to the tax court. There, the IRS conceded that under relevant law it was not permitted to collect Willson's erroneous refund by creating a new 2006 assessment; rather, its only options to recover the refund were to (1) pursue an erroneous refund suit under 26 U.S.C. § 7405, for which the two-year statute of limitations had already expired; (2) accept voluntary repayment from Willson or (3) exercise its common-law right to offset a debt

owed to the government with a debt owed to the taxpayer so long as it did so within two years of the date of the refund. Because it had created the 2006 assessment improperly, the IRS abated the assessment, leaving a zero dollar balance on Willson's 2006 tax account. It also determined that it was time barred from using its set-off power to retain the overpayment Willson reported on his 2009 tax return ($2,206.55) and refunded that amount to Willson. Because neither an unpaid liability nor a pending levy action remained for the tax court to review, the IRS moved to dismiss the case as moot.

Willson, appearing *pro se*, objected to dismissal. Although the IRS refunded the portion of the 2009 overpayment set off ($2,206.55) sent more than two years after the date of the erroneous refund, the IRS did *not* refund the $100 tax payment Willson sent in March 2010—*within* two years of the erroneous refund. Furthermore, the IRS retained the $5,000 repayment it claimed Willson had sent voluntarily in May 2011. Willson argued that the tax court had the power to order repayment of funds collected on a wrongful assessment; he therefore demanded repayment of the $5,100 the IRS retained and filed a motion on the pleadings to that effect. The tax court rejected his arguments and, over Willson's continuing objection, dismissed the case as moot. Willson timely appealed; our review is *de novo*. *See Gaughf Props., L.P. v. Comm'r*, 738 F.3d 415, 420 (D.C. Cir. 2013).

## II.

If an actual case or controversy ceases to exist during the course of tax court proceedings, the tax court must dismiss the case as moot. *Byers v. Comm'r*, 740 F.3d 668, 679 (D.C. Cir. 2014) (because "there was no actual case in controversy[,] . . . [t]here was no appropriate course of action for the Tax Court to

take but to dismiss as moot the dispute"). Furthermore, because the tax court possesses only "limited jurisdiction," *Comm'r v. McCoy*, 484 U.S. 3, 7 (1987) (per curiam), and may exercise it "only to the extent expressly authorized by Congress," *Greene-Thapedi v. Comm'r*, 126 T.C. 1, 6 (2006), the controversy must *also* fall within the court's statutory grant of jurisdiction. Thus, if a case raises a question within the jurisdictional purview of the tax court, and that question is subsequently resolved, the case is moot notwithstanding the existence of other live controversies between the taxpayer and the IRS that do *not* fall within the tax court's jurisdiction. *See, e.g.*, *Byers*, 740 F.3d at 679 (affirming tax court's dismissal of claims for particular tax year as moot after rejecting taxpayer's argument that tax year "remained relevant to resolving the case's outcome"); *Chocallo v. Comm'r*, T.C.M. (RIA) 2004-152, 2004 WL 1435478, at *2–3 (2004) (dismissing case as moot after IRS abated taxpayer's liability notwithstanding taxpayer's claims for damages and request that IRS employees who handled her case be criminally prosecuted).

At issue here is the tax court's jurisdictional grant under 26 U.S.C. § 6330(d)(1). Section 6330 grants a taxpayer certain notice and hearing rights before his property becomes subject to levy; specifically, the IRS must provide the taxpayer thirty days' notice of the proposed levy action and of his right to request a CDP hearing before a neutral IRS appeals officer. *Id.* § 6330(a)–(b). During the CDP hearing, the taxpayer "may raise . . . any relevant issue relating to the unpaid tax or the proposed levy" and may challenge his "underlying tax liability" if he did not receive statutory notice of deficiency or "otherwise have an opportunity to dispute such tax liability." *Id.* § 6330(c)(2)(A)–(B). At the conclusion of the CDP hearing, the IRS appeals officer makes a "determination" regarding the legitimacy of the proposed levy and, if relevant, the amount and/or existence of the unpaid tax liability. *See id.*

§ 6330(c)(3). Section 6330(d)(1) allows the taxpayer to seek review of the IRS determination in the tax court. *See id.* § 6330(d)(1). Specifically, the taxpayer may appeal a "determination [under section 6330] to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." *Id.*

Willson asserts that his case is well within the scope of this jurisdictional grant. He argues that the $5,100 the IRS collected was to satisfy what it now admits was an incorrectly assessed "underlying tax liability," *see id.* § 6330(c)(2)(B); accordingly, he believes that the tax court has the power to review that liability and to order the IRS to return those funds. In his view, this live controversy precludes dismissal on mootness grounds.

We disagree. The IRS retained the $5,100 not to satisfy a tax liability but to recover an erroneous refund sent as a result of a clerical error.[1] The debt created by such an erroneous refund is *not* a tax liability. *See, e.g.*, *O'Bryant v. United States*, 49 F.3d 340, 347 (7th Cir. 1995) ("[E]rroneous refunds and tax liabilities are simply not of the same ilk."); *Pac. Gas & Elec. Co. v. United States*, 417 F.3d 1375, 1383 (Fed. Cir. 2005) (refunds sent due to clerical error "are owed to the government by reason of unjust enrichment" instead of "statutory obligation under the tax code to pay the government"). As for Willson's "underlying tax liability," there is none. The IRS has entirely abated the 2006 liability it improperly assessed, returned the $2,206.55 it collected in satisfaction of that improper liability and abandoned its levy.

---

[1] Willson himself was well aware of this. Indeed, he was adamant that his $5,000 payment not be characterized as a tax payment but as a return of an erroneous refund. *See* Ltr. from Geoffrey K. Willson to Joy Wannamaker, *supra*, at 2.

We encountered a similar case in *Byers*, 740 F.3d 668. There, a taxpayer sought tax court review of an IRS levy action covering several tax years. *Id.* at 674. In tax court, the IRS admitted that it had unlawfully entered an assessment for the tax year 2003 due to its failure to provide the taxpayer adequate notice of deficiency. *Id.* To correct its mistake, the IRS abated the assessment and abandoned the levy action for 2003. *Id.* As a result, the tax court granted the IRS's motion to dismiss the 2003 claim as moot. *Id.* We affirmed the dismissal, reasoning that the absence of a pending levy meant that no case or controversy remained as to the 2003 tax year. *See id.* at 679.

The same reasoning applies here. No unpaid tax liability remains on Willson's 2006 tax account. The IRS no longer seeks to levy on his property. This is, in fact, the very relief Willson ostensibly sought when he requested a CDP hearing to challenge the proposed levy in the first place. Willson has received all the relief that section 6330 authorizes the tax court to grant him; if he is entitled to any other relief—with regard to the disputed $5,100 or otherwise—he must seek it in district court or in the Court of Federal Claims.[2] *See* 28 U.S.C.

---

[2] The same is true of Willson's claims that the IRS violated his constitutional rights, the Ex Post Facto Clause and the constitutional principle of separation of powers in pursuing a levy against him; because the tax court has granted him all the relief to which he is entitled under section 6330, those claims likewise belong in district court or in the Court of Federal Claims.

Willson also contends that the case is not moot because he has a claim for costs and attorney's fees, but a plaintiff's attorney's fees claim cannot of its own accord keep alive any merits claim that would otherwise be moot. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990); *accord Johansen v. United States*, 506 F.3d 65, 70 (1st Cir. 2007).

9

§ 1346(a)(1) (granting federal district court and Court of Federal Claims original jurisdiction over actions for "recovery of any internal-revenue tax"); 26 U.S.C. § 7422 (setting out procedure for taxpayer refund suits); *id.* § 7433(a)–(b) (granting right to bring suit against government for damages if IRS collection action is unlawful). "With no levy being placed upon [Willson's] property[,] . . . there was no actual case in controversy regarding [his] appeal of such a levy action." *See Byers*, 740 F.3d at 679. Accordingly, "[t]here was no appropriate course of action for the Tax Court to take but to dismiss as moot" Willson's case. *See id.*

For the foregoing reasons, the judgment of the tax court is affirmed.

*So ordered.*